Good morning, Robert Rexroth for the Appellant, Ms. Reyes-Hernandez. For want of a simple accommodation to transport a juror for the second day of trial, Ms. Reyes's right to be tried by the jury of her choosing evaporated. This right, continually referred to by the Supreme Court and this Court as a valued right, deserved more. Honoring this valued right deserved more effort here. And I want to start briefly, because I, reading over the briefs in preparation for this, and the excerpts of the transcripts, it seemed like I, the defense counsel, was the only person offering solutions at the time this juror informed the Court that he couldn't make it or thought he couldn't make it. And it's really not Ms. Reyes's job to fix this problem. I mean, it's her right to be accommodating. I mean, it's her right to assert that she'd be tried by the jury that she chose. Should be accommodating that, but it's not her job to fix the problem. And it's notable that I found that there was no effort by the government and there was candidly, little effort by the District Court to actually physically solve this problem. And it wasn't an insurmountable problem. I'd point the Court to three significant facts that I think in the record that show that this right could have been honored here and should have been honored here. One was that the marshals were perfectly available to transport this juror. The District Court, the one option that the District Court did give over and over was to go out and arrest this juror, send the marshals out, bring the person back in handcuffs. So the marshals were available to transport this juror. Second, and this is an excerpt of Record 12, and I think this is significant, is when the about how busy the marshals were, right? She did, Your Honor. And she did after... The short answer to the Court's question is yes, she did make that comment. I think chronologically that comment was made in a discussion of whether or not the juror would have to be transported back and forth between San Diego and El Salvador. Well, the reason I raise that is I don't know what you base your argument on that, you know, the marshals could have transported him, what, a half a day to Imperial County and a half a day back, kind of? I mean, they have that kind of extra resources at their disposal? That's not the argument I'm making, sir. My argument is that the marshals were available to transport the juror to San Diego for the trial. And I'm basing my argument on that, on the fact that the District Court... But they'd have to do that every day. No, sir, I don't think they would. Why? To the second fact is that juror, when the juror was on the phone with the court in open court, said that, look, my family is dealing with an illness, but they'll be free by 6 p.m. that night. So I guess what I'm saying is if the District Court was willing to send marshals to bring this person, bring this juror to court, and presumably have them spend the night in custody, there is nothing preventing the marshals from bringing that gentleman to court and then that gentleman having accommodations made through his family, whether or not that's a trip back to El Centro or whether that's my second... Whether or not they put that juror up in a hotel in San Diego, which I think is significant because that's exactly what the District Court writ large, the Southern District of California, does with jurors from El Centro, from what we call the Valley. It's not the job of the U.S. Marshals to basically serve as Uber drivers for jurors. I mean, they can arrest them. That's one of their jobs. They can transport defendants, criminal defendants, but that's not really their job to do this. No. And I don't think I'm arguing that they're Uber drivers or they should be. They have better things to do. What they can do is they can arrest people. And what I'm... For the second day of trial, then there's a lesser included power in that, that they can transport them. And sir, it's one way from El Centro to San Diego, and then accommodations could have been hashed out in San Diego. But arrest is one of their powers and duties, so obviously they can arrest people. That's one of their duties. But transporting jurors isn't part of their duties. Well, no, frankly no. But I mean, as I listed in my opening brief, I mean, the marshals do more than just arrest people. Marshals secure transportation, lodging for witnesses. I'm just saying they could have, if the offer is on hand, hey, Mr., hey, Ms. Reyes, we're willing to cuff this juror up and bring him here through an arrest to honor your right to be tried by the jury of your choosing. If her response, and my response, I'll be quite candid, I'm the attorney from down there. My response is, the last thing I want is a juror who's angry to the degree that they've been arrested and they're going to spend an eye on the tank. If that's the situation we're in, then there's nothing preventing the marshals from not cuffing him, which was one of my suggestions, and driving him to San Diego. I don't think that turns them into a taxi service. I don't think that's asking too much of the marshals. I certainly think that it's well within the power of the district court to order the marshals to do that. The court was willing to order the marshals to do precisely that, but in the form of an arrest. Is it clear in the record that his family had been contacted and would have agreed to retrieve him? I mean, your solution seems, in part, unless we go to the second argument, that he should have been put up in a hotel or a motel, some accommodations there. But I don't read the record that he had arranged with his family to come and get him. And so here you've got a judge stranding a juror in a community distance from his home. The record doesn't state that he had made arrangements with his family, and I didn't mean to imply that. But what the record does state, and again, that's an excerpt of Record 12, is that his family would be available to him by 6 p.m. that evening. Look, jury service is an honor, it's a right, and it's a hassle. I don't know what was going on with this gentleman. I don't know what was going on with his car. All I can tell you is that we picked a jury, we're halfway through trial, and allowing one person, just because they're having car trouble, to disregard the hours, the days of preparation, the anxiety leading up to that trial, isn't honoring Ms. Reyes's right to be tried initially. There are times when, obviously, the right to be tried by a jury of your picking initially has to give way. This isn't one of them. And it's not just, I mean, that's not making up the, hey, let's put him up in a hotel. I mean, that's a, I think it's, I can get the citation for you from the record. I don't have it on my outline right now, I apologize. But that is the practice in the Southern District. It was just a question of timing, right? And that's just like a, that's a bureaucratic hoop. We'll pay for your hotel. You're absolutely right, Ms. Reyes. We can put the juror up in the hotel in San Diego, so he's not spending the night in cell, so we're not having the marshals transport him back and forth. We do that, but we just can't pay the money up front. For whatever reason, I don't know why. And the District Court actually mentions in the record, we're looking at changing that. And I hope they do, because it's kind of silly in today's world. You should have a contract with a hotel. But that doesn't do Ms. Reyes much good. I notice I'm down to about a minute and 30. I'd like to reserve unless there's any specific questions right now. Thank you, Counsel. Good morning, Your Honors. May it please the Court. Andrew Chang for the United States. The District Judge in this case made a judgment call under some difficult circumstances and declared a mistrial. Appellant may disagree with that decision, but the procedures used by the judge in this case were pretty much by the book. And the law in this circuit is quite clear. So long as a judge uses sound procedures to reach her decision, a reviewing court will not substitute its judgment. And this is particularly true in the context of this case, where the decision to declare a mistrial was very much a product of the appellant's own decisions. One thing the District Judge didn't do, I don't understand this either, the juror was unable, first of all, I think it's unusual, I think for hotels to make guests pay in advance. When you come up here to stay, you have to pay your hotel in advance? Well, I think the system set up in the Southern District is that they anticipate that somebody will have a credit card. They will use that credit card to pay for the hotel, and they will be reimbursed later by the court. And so I think that's currently the system set up in the Southern District, and it certainly was. If that's all there is to it, it's kind of a very narrow system. In other words, as far as I can understand from this record, there's no way to get an advance on travel costs, is there, in the Southern District, is that right, for a juror? Well, that's what the record indicates, Your Honor. That's kind of odd. You know, I know in our court, like a law clerk, when they travel, they can get a travel advance. Why can't the clerk give a travel advance to a juror? You know, I don't have a good response to that. I know you don't, because it's not your job, but my point is that the judge could have inquired of the clerk herself or himself and said, why can't you give this juror an advance, right? He didn't do that, did he? Well, I think... He accepted some representation from somebody that, no, we don't give advances, and that was it. Is that making a sufficient inquiry for manifest necessity? Well, I think that the judge in this case had an understanding of how certain logistical aspects worked in the rural district. Right. He could question that understanding. I mean, he's the judge, and, you know, the clerk works for the court, and the purpose of the clerk is, you know, to move out the administration, logistic functioning of the court's business. Well, I don't... He could say to the clerk, listen, why don't you give this juror an advance? Couldn't he? He didn't do that. Well, I think... I don't think that it was the court's deputy or the clerk that gave the judge this information. I think the record indicates that the judge understood that how the things worked in the I know that, but the question is, why should they work that way? They don't have to work that way. Well, and... Like, in our court, you know, people can get advances. I'm sure it's true in the Southern District, too. I bet you it's true in the U.S. Attorney's Office in the Southern District. You can get a trial advance if you need it, right? Candidly, Your Honor, I think the judge in this case recognized that perhaps the district could do better, and so she... Could do better in that... In this case. I mean, in other words, my question is, does that meet the standard of manifest necessity? I think it does, Your Honor, because I think that presented a very real roadblock to getting the juror into court. I know it's a roadblock. The question is, you know, how much effort would it have taken for him to remove that roadblock? Well, certainly, I don't think that effort could have been removed at that point in time, and I think that is the inquiry that the court should be looking at in this particular case. That's an inquiry he should have made at the time before he, you know, called in this trial, isn't it? Well, I don't think that the court could have done anything about that at that time, I think is the... He didn't do anything about it. He just accepted the word of the, you know, the clerk that, no, we don't give advances. That's our policy. Well, again, I don't think the judge simply just accepted the word of the clerk. I think the judge understood that that was how the jury process worked in the district. I know that. I agree. He understood that's the way it worked, but he's just, you know, there's something wrong with the system. Can't you give this jury an advance? He didn't make that inquiry, did he? He didn't say, I want you to do whatever you can to give the advance. In other words, he just accepted what the court told him, that this is the way systems work, no advances. I don't care if you're the judge and I'm the clerk, no advances. Well, Your Honor, I think my response to that would be, you know, I think that the double jeopardy principle doesn't demand perfection of the district judges. No, but, you know, in some situations, in other words, if you can make inquiry, you know, in the correct situation, I mean, does that, you know, lack of effort support manifest necessity? He didn't even make an inquiry. I think in this case, because the judge was comfortable with the- I know a lot of district judges that say, okay, I want the clerk himself or herself coming to my courtroom right now. Right? And he would address the clerk right there in court and say, why can't you give this juror an advance? Right? He didn't do that. I think, well, I think the record reflects that the judge was comfortable with the information that she had. That's the problem. He was comfortable with it and he didn't make the inquiry. Well, I think I would just respond that, you know, the double jeopardy principles don't demand perfection from the district judges. Did any of the parties ask to challenge the clerk or bring the clerk's office in? I didn't see that in the record. I saw just the offer to have appellant's counsel pay, which was refused. But I didn't see that anybody questioned that practice other than the judge on reflection said maybe we should look at this going forward. Isn't that the obligation of the parties when they're told this is the way things work in this district? That, I know in my district, not that we're here, we never, it's one thing to advance for employees. It's another thing to advance for jurors and we have the same rule in place. We don't advance money for jurors. And I didn't read in the record that appellant's counsel or the government asked that that policy be reviewed. And I think that's a fair point, Your Honor. You know, we are an adversarial system of justice and, you know, none of the parties, neither the government nor appellant's counsel sought to challenge this practice. But I also think that that's sort of a reflection of everyone's understanding of how that was just the system that was set up in our district at the time and that there was just nothing anyone could do about it. And I would just like to point out that, you know, at the end of the day, we're talking about a judge's exercise of discretion. And, you know, in this particular case, the appellant doesn't really challenge any aspect of the process in which the judge reached her decision. This wasn't a case where the judge was insistent on going her own way. I think she gave both sides a full and fair opportunity to air their views. And this wasn't a case where the judge behaved impulsively or brashly. I think, if anything, this judge was very deliberate. And I think the irony of this appeal is that the appellant initially had decided to agree to go with the 11 jurors. Or the appellant's counsel kind of agreed, but not the appellant. Well, the record shows that he had conferred, he had spoken to his client. And I think that if the court simply accepted this opening bid, I don't think we would be here on appeal discussing a double jeopardy bar. But I think because the court was very attuned to what was happening and was very sensitive to the client's, the appellant's rights, that the court actually did the work of exploring additional options for this appellant. And that led to the court, you know, floating the possibility of arresting the juror. And this led to a broader discussion of, you know, the appellant asking the court to actually call the juror and bring, and give this juror an audience. The court did this. And only after every possibility was exhausted of trying to convince the juror to come back did the court declare a mistrial. And even at that point, the court was extremely hesitant about what it was trying to do because it was afraid of the double jeopardy consequences of its decision. So I think just given the high level of sensitivity and the high level of deliberation exercised by the court, I think it really bodes in favor of this court respecting the discretion used by the judge in this case. And I'm happy to answer any questions the court has. If there are no other questions, the United States would ask the court affirm and give the government a opportunity to try Miss Reyes again. Thank you. Great. Thank you. Very briefly, it's excerpt of record 24 is where the discussion of changing the policy about the hotels is found. Sorry, I didn't have that at the tip. And, Your Honor, it's at my opening brief on page 11, particularly footnote 24 of the citations. Marshals routinely under Rule 17, Federal Rule of Criminal Procedure 17, they provide noncustodial transportation for witnesses. There's an unpublished case where the marshals are ordered to pay accommodation for a witness. I don't know why that wouldn't apply to a juror. It seems that they're both quite necessary for a trial. You're absolutely right. I didn't ask to cross-examine John Murrell, the clerk of court. I didn't do that. I didn't think I had to. I had, I thought, a pretty reasonable alternative. I wasn't offering to pay for the hotel. I was offering to lend the Southern District of California $200. I thought that was a safe loan. I thought I'd get it back. This was wrong. Thank you. Great. Thank you both for the helpful argument. The case has been submitted.
judges: TASHIMA, LEE, Freudenthal